NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARGARET M. COX, THERESA HUBAL and SUSAN PERRY-SLAY, <br><br> Plaintiffs, <br><br> v. <br><br> OFFICE OF ATTORNEY ETHICS OF THE SUPREME COURT OF NEW JERSEY, and the ADMINISTRATIVE OFFICE OF THE COURTS, <br><br> Defendants, | Civil No. 05-1608 (AET) <br><br> **OPINION & ORDER** |

THOMPSON, U.S.D.J.

I. INTRODUCTION

This matter comes before the Court on Defendant Office of Attorney Ethics ("OAE") and Defendant Administrative Office of the Courts' Motion for Summary Judgment and Plaintiffs Margaret M. Cox, Theresa Hubal and Susan Perry-Slay's (collectively "Plaintiffs," individually "Cox," "Hubal" and "Perry-Slay") Cross-Motion for Summary Judgment. The Court has decided these motions based upon the submissions of both parties and without oral argument pursuant to Fed. R. Civ. P. 78. For the following reasons, Defendants' Motion for Summary Judgment is denied on all counts, except with respect to Plaintiffs' New Jersey Law Against Discrimination ("NJLAD") claims, which are dismissed. Plaintiffs' Cross-Motion for Summary Judgment is denied.

## II. BACKGROUND

This is an employment dispute stemming from allegations of sexual discrimination. The Plaintiffs, all female, worked for the OAE as Administrative Specialist-3 investigators ("AS-3"), and allege they performed work that was substantially equal to the work performed by male, Administrative Specialist-4 investigators ("AS-4"), who received higher pay. The OAE is the investigative and prosecutorial arm of the Supreme Court of New Jersey, charged with investigating potential attorney misconduct within the state. (See Def.'s Statement of Undisputed Material Facts Supp. Def.'s Mot. for Summ. J. (" D.'s SOF") ¶ 1.) At the time Plaintiffs were hired, the OAE had two investigative units entitled the "Complex Unit" and the "District Unit," comprised of investigators of various pay, skill, and experience levels, such as AS-3s and AS-4s. (Id. ¶ 2.) Plaintiffs were hired as AS-3s, and initially worked in the District Unit, which investigated infractions of the New Jersey Rules of Professional Conduct ("NJRPC"), such as failure to communicate, lack of diligence, gross neglect and conflicts of interest. (Id. ¶ 4.) They were later transferred to the Complex Unit, which, as can be surmised from its name, handles more complex issues stemming from serious violations of the NJRPC, such as attorney fraud and misappropriation of client's funds. (Id. ¶ 6.)

In the summer of 1999, Perry-Slay responded to an OAE "Notice of Vacancy," seeking applicants at the AS-3 level. (See Pls.' Mot. Summ. J. Ex. 5.) This posting identified the requirements of an AS-3 hire as (1) a "[b]achelor's degree from an accredited college or university"; and (2) "[t]hree years of professional experience in conducting investigations which shall have included the review and analysis of legal records statements, interrogatories, and similar documents." (D.'s SOF ¶ 25.) The posting informed applicants that graduate education

experience could be substituted for professional experience, and that experience with "white collar crime investigations and financial records is helpful." (Id.) The OAE hired Perry-Slay and salaried her at $34,365 per year, which was higher than the base salary of an AS-3 because the Director credited Perry-Slay with six years of relevant professional experience. (Id. ¶ 32-33.)

In the summer of 2001, Cox responded to an OAE Notice of Vacancy for AS-3 and AS-4 positions. (D.s' SOF at ¶ 38- 40.) The qualifications listed for AS-3 and AS-4 positions were identical, except that the AS-4 position required five years of investigatory experience, while the AS-3 required three years. The Notice stated that for both positions graduate education was substitutable for work experience and experience in "white collar crime investigations and financial records is helpful." (Id.) The OAE offered Cox the AS-3 position at the minimum salary. She refused that offer and accepted their later offer of the AS-3 position, at a salary of $37,772 per year, which gave her an increase in salary based on the Director's crediting her with six years of relevant professional experience. (See D.s' SOF ¶ 44- 45.)

In the spring of 2003, Hubal responded to an OAE Notice of Vacancy for both the AS-3 and AS-4 positions. (See D.'s SOF ¶ 60.) The requirements listed for the AS-3 and AS-4 positions were the same as when Cox applied. Hubal applied to the OAE, requesting a salary at the upper range of the AS-3, and within the range of the AS-4 positions. (See Def.s' Mot. Summ. J. Ex. 20.) Similar to Cox, Hubal initially rejected the AS-3 position at a minimum salary but later accepted a salary of $40,606.06 per year, an increase over the base salary reflecting the Director's crediting her with six years relevant experience. (See D.'s SOF ¶ 64.)

Both sides contest the quantity, quality, and difficulty of the work Plaintiffs performed. It is undisputed, however, that by 2005, all three Plaintiffs worked along side the AS-4s in the

Complex Unit, in the same office, managed by the same supervisors.

The OAE began transferring investigators from the District Unit into the Complex Unit in late 2002 because the Complex Unit became bogged down with a substantial backlog of cases. (D.s' SOF ¶ 110.) After initially transferring two AS-3 investigators, in late 2003 the Supreme Court of New Jersey directed three more District Unit investigators be transferred to the Complex Unit. The OAE Director, initially opposed the transfer order, asserting that it would leave the District Unit understaffed and that the transferees lacked the requisite financial skills to adequately handle the Complex Unit workload. (Def.'s Mot. Summ. J. Ex. 30.) Nonetheless, the transfer was completed. (Def.'s Mot. Summ. J. Ex. 32.)

The OAE Director selected Cox and Hubal for transfer to the Complex Unit in January 2004. (D.s' SOF ¶ 120.) Perry-Slay later joined them in January 2005, when the Supreme Court of New Jersey discontinued the District Unit, and ordered the remaining investigators be transferred to the Complex Unit. (D.s' SOF ¶¶ 126-27.) While at the Complex Unit, Plaintiffs were supervised by the same personnel as the AS-4s. Cox and Hubal were assigned work from a common pool of cases shared with the AS-4s. (Plfs.' Statement of Undisputed Material Facts Supp. Plfs.' Mot. for Summ. J. ("P.s' SOF") ¶¶ 4, 67.) Defendants assert that the OAE took care to assign Plaintiffs the easiest cases available, and those requiring no financial analysis. (D.s' SOF at ¶ 133-34; Def.s' Ex. 34.) The OAE assigned Perry-Slay to manage the Complex Unit's civil untriable cases, while the management of the criminal untriable cases was given to an AS-4.

Eventually, Cox and Hubal retired from the OAE believing they were treated inequitably as compared to the male AS-4s. Cox worked in the Complex Unit for eighteen months, and Hubal for two years prior to their resignations. Perry-Slay continues to work in the Complex

Unit, and is currently assigned cases beyond her management of the civil untriable cases. As with Hubal and Cox, Defendants allege Perry-Slay continues to receive cases of lesser complexity as compared to those received by AS-4s. (D.s' SOF at ¶ 127.)

Based on these facts, Plaintiffs claim that Defendants; (1) "violated the federal Equal Pay Act" ("EPA"); (2) violated the NJLAD, committing discrimination based on sex, in hiring, paying, failing to promote, and failing to properly classify Plaintiffs' job; (3) violated NJLAD, by "allowing and perpetuating a sexually hostile work environment"; and (4) violated Title VII of the Civil Rights Act of 1964, committing discrimination based on sex, in hiring, paying, failing to promote, and failing to properly classify Plaintiffs' job; and allowing and perpetuating a hostile work environment. (See Def.s' Mot. Summ. J. Ex. 1; First Am. Compl. at 2.) Perry-Slay joins in all the above claims and, in addition, asserts Title VII, NJLAD, and EPA claims stemming from racial discrimination. (Id.)

Defendants now move for summary judgment seeking to dismiss all of Plaintiffs' claims. Plaintiffs' cross-move for summary judgment asserting Defendants violated the EPA from the date the OAE transferred Plaintiffs to the Complex Unit. Further, Plaintiffs request that the Court award to them liquidated damages under the EPA for Defendants' alleged discrimination.[1]

Because multiple genuine issues of material fact pervade the EPA and Title VII claims, both parties' motions for summary judgment on these issues are denied. Defendants' motion for

---

[1] When an employer has violated the EPA, there is a presumption that the aggrieved employee should receive liquidated damages as "a matter of course." See, e.g., EEOC v. Altmeyer's Home Stores, 698 F. Supp. 594, 600 (W.D. Pa. 1988). However, because the Court finds Plaintiffs have not established their EPA claim as a matter of law, an assessment of whether liquidated damages is appropriate would be premature. Therefore, the Court denies Plaintiffs' motion for liquidated damages.

summary judgment as to Plaintiffs' NJLAD claims is granted for the reasons set forth below.

## III. STANDARD OF REVIEW

A.   Standard for Summary Judgment

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 414 (3d Cir. 1999). The moving party may cite to the pleadings, deposition, answers to interrogatories, or admissions on file, to demonstrate that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law. Lawyers Title Ins. Corp. v. Philips Title Agency, 361 F. Supp. 2d 443 (D.N.J. 2005). "[L]egal conclusions, unsupported by documentation of specific facts, are insufficient to create issues of material fact that would preclude summary judgment." Jersey Cent. Power & Light Co. v. Twp. of Lacey, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

## IV. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

A.   Defendants Concede Plaintiffs' EPA Claim is Rife with Genuine Issues of Material Fact

Defendants demand summary judgment against Plaintiffs' EPA claim, yet paradoxically concede numerous times in their opposition to Plaintiffs' cross-motion for summary judgment that material issues of fact exist concerning crucial elements of the EPA claims.[2] Of the many

---

[2] (See, e.g., Def.s' Op. to Plf.s' Mot. for Partial Summ. J. at 8, under Legal Argument Point I, (stating "Plaintiffs' motion for summary judgment must be denied because *there are genuine issues of material fact* that preclude a finding that Defendants have violated the EPA");

material issues of fact conceded by Defendants several are fatal to their motion. For example, Defendants state genuine issues of fact exist regarding (1) "the substantial equal[ity]" of Plaintiffs jobs compared against male AS-4; and (2) the "equal skill, effort and responsibility" of the AS-3 and AS-4 jobs. Though Plaintiff bears the burden of persuasion at trial regarding the issues above, if a material issue of fact exists regarding these critical issues, then summary judgment for either side is inappropriate. See, e.g. E.E.O.C. v. Chubb & Son, No. Civ. 03-4771 2005 WL 758245, at *5 (E.D. Pa. April 1, 2005) (denying summary judgment on an EPA claim where the "'substantial' [equality of jobs] would appear to present questions of fact").

Further, Defendants concede issues of material fact exist as to their affirmative defense that "a factor other than sex accounted for the wage disparity" between the Plaintiffs and male AS-4s. (Defs.' Op. at 37.) This surely thwarts Defendants' attempt to meet the "heavy burden" placed on this affirmative defense. See Dubowsky v. Stern, Lavinthal, Norgaard & Daly, 922 F.Supp. 985, 993 (D.N.J. 1996) (the defendant's "burden [to prove a factor other than sex accounted for the pay discrepancy] is a heavy one, far exceeding the burden of articulation born by a defendant to a Title VII action").

Therefore, the Court denies Defendants' motion against Plaintiffs' EPA claim as their admissions foreclose any serious discussion of whether Defendants' position warrants summary judgment. See, e.g., Stansell v. Sherwin-Williams Co., 404 F. Supp. 696, 702 (N.D. Ga. 1975)

---

see also id. at Legal Argument Point A (stating "*A genuine issue of material fact exists* concerning whether the jobs performed by plaintiffs required equal skill, effort and responsibility as the jobs performed by the male AS-4s precluding entry of summary judgment in favor of plaintiffs on their EPA claims."); see also id. at Legal Argument Point B (stating "*A genuine issue of material fact exists* as to whether the work plaintiffs did in the Complex Unit was substantially equal, precluding summary judgment in favor of plaintiffs.") (emphasis added).)

(denying defendant's 12(b)(6) motion on plaintiffs' EPA claim where "[d]efendant even admits that a genuine issue exists as to material facts with respect to plaintiff's EPA claim").

B.     NJLAD Claims and Sovereign Immunity

Defendants seek summary judgment against all of Plaintiffs' NJLAD claims, asserting that as state agencies, Defendants are immune from suits by private parties in federal court. See Quern v. Jordan, 440 U.S. 332 (1979) (stating "[a] suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment"); Garcia v. The Richard Stockton College of N.J., 210 F. Supp. 2d 545 (D.N.J. 2002) (holding New Jersey may not be sued in federal court under the NJLAD).

Plaintiffs attempt to rely on the Ex Parte Young doctrine to circumvent the sovereign immunity enjoyed by Defendants, as state agencies. See Ex parte Young, 209 U.S. 123, 159 (1908); Laskaris v. Thonrburgh, 661 F.2d 23, 26 (3d Cir. 1981) (stating "[t]he eleventh amendment's bar extends to suits against departments or agencies of the state having no existence apart from the state . . . but the amendment does not bar a suit seeking declaratory or injunctive relief against the same officials").  However, the Ex Parte Young doctrine inapplicable here as it only applies as a waiver of immunity for state officers not state agencies. See, e.g., Law Offices of Christopher S. Lucas & Assocs. v. Disciplinary Bd. of the Super. Ct. of Pa., 128 Fed. Appx. 235, 237 (3d Cir. 2005) (holding the Eleventh Amendment barred plaintiff's claims because he failed to name individual state officers and "[t]he Ex Parte Young exception applies only in actions against individual state officers, and not to state agencies"). Because Ex Parte Young does not apply, Defendants are immune from Plaintiffs' NJLAD claims, and Defendants' Motion for Summary Judgment is granted as to those claims.

C.  Where Summary Judgment is Inappropriate Under the EPA, So Too is it Inappropriate Under Title VII

The analyses of Title VII claims and EPA claims, though not identical, have considerable overlap.  A violation of the EPA constitutes a violation of Title VII.  Miller v. Beneficial Mgmt. Corp., 977 F.2d 834, 846 (3d Cir. 1992).  Generally, where material issues of fact exist in an EPA claim, the same issues of fact preclude a summary judgment dismissal of a Title VII claim.  See, e.g., E.E.O.C. v. Chuv & Son, No. Civ. 03-4771, 2005 WL 758245, at *6 (E.D. Pa. Apr. 1, 2005) ("Because there are disputed issues of material fact regarding a violation of the Equal Pay Act, [the Court] find[s] that there are disputed issues of material fact regarding the Title VII . . . claims of gender discrimination."); Ryan v. Gen. Mach. Prods., 277 F. Supp. 2d 585, 599 (E.D. Pa. 2003) (analyzing only the EPA claims, finding "there are genuine issues of material fact regarding Plaintiff's equal pay claims. Therefore, Defendants' Motion for Partial Summary Judgment will be denied as to Plaintiff's equal pay claims under *Title VII . . . and the EPA*") (emphasis added).

Here, as Defendants admit, there are material issues of fact regarding the substantial equality of Plaintiffs' work compared against the male AS-4 investigators, and "genuine issues of material facts as to whether a factor other than sex accounted for the wage disparity" between Plaintiffs and the AS-4s.  Therefore, Defendants' motion for summary judgment as to Plaintiffs' Title VII claims is denied.

V.  PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiffs move for summary judgment, asserting that Defendants violated the EPA, at least from the date of their transfer to the Complex Unit.  The EPA prohibits employers from

9

paying different wages to employees of the opposite sex, when the work "requires equal skill, effort, and responsibility, and [is] performed under similar working conditions." 29 U.S.C. § 206(d)(1). To prevail at the summary judgment stage, Plaintiffs are required to make a prima facie showing that: (1) the OAE paid lower wages to Plaintiffs compared with the male AS-4s; (2) Plaintiffs performed work requiring "equal skill, effort, and responsibility"; and (3) "the jobs were performed under similar working conditions." Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d. Cir. 2000). If Plaintiffs establish a prima facie case, the burden of persuasion shifts to Defendants, who must prove as an affirmative defense that a factor other than gender motivated the pay differential.

A.     Pay Differential and Working Conditions

It is undisputed that Plaintiffs were paid less than their male AS-4 counterparts in the Complex Unit. (P.s' SOF ¶ 18.) Defendants point out that female AS-4 investigators in the Complex Unit were also paid more than Plaintiffs. This is not dispositive of the claim. Several courts have stated, under the EPA, a plaintiff does not have to prove a pattern of discrimination, or that an employer paid all women less than all men. Beck-Wilson v. Principi, 441 F.3d 353, 359-60 (6th Cir. 2006) (stating for an EPA violation "there is no requirement that the plaintiff prove an intent to discriminate" and therefore the plaintiff "need not prove that defendant discriminates against all female employees"). Plaintiffs have fulfilled their prima facie obligation by coming forward with several male comparators who allegedly performed equal work at higher wages. Dubowsky, 922 F.Supp. at 990-91 ("Plaintiff need not establish a pattern and practice of sex discrimination. To the contrary, she need only establish that she was paid less than a single male employee for equal work on the basis of sex to prevail on her claim.")

(citations omitted). Further, it is uncontested that during Plaintiffs' time at the Complex Unit, they worked in the same area, under the same supervision, and were assigned cases from the same common pool as the male AS-4s. Based on this, Plaintiffs have sufficiently established they were employed in the same working conditions as the AS-4s.

B. Genuine Issues of Material Fact Exist Regarding the Substantial Equality of Plaintiffs' Work as AS-3s Compared to the Work Performed by the Male AS-4s

The touchstone inquiry in this case, as with most EPA cases, is whether the work performed by Plaintiffs was substantially equal to the work performed by the male employees with whom they compare themselves. The EPA focuses the inquiry on whether the performance of the jobs compared "require[] equal skill, effort, and responsibility." See 29 U.S.C. § 206(d)(1); see also Dubowsky, 922 F. Supp. at 990. The Third Circuit has characterized this issue as whether "the jobs compared have a 'common core' of tasks." Brobst v. Columbus Svcs. Int'l, 761 F.2d 148, 156 (3d Cir. 1985). At the prima facie stage, the Court examines only the skills and qualifications actually needed to perform the jobs, rather than the qualifications of the individuals who occupy the jobs. Mulhall v. Advance Sec., Inc., 19 F.3d 586, 592 (11th Cir. 1994); Dubowsky, 922 F. Supp. at 990 (stating "it is the jobs, and not the individuals who held the jobs, that the Court must compare").

The record regarding the substantial equality of Plaintiffs' work versus the work of the male AS-4s is rife with genuine disputes of material fact concerning the skill, effort, and responsibility required to do the jobs. Addressing the quantity of work performed, Plaintiffs assert that Cox completed seven cases in her first eleven months at the Complex Unit, whereas Defendants claim she completed only five cases during her entire eighteen-month tenure.

11

Plaintiffs assert that Hubal completed eleven cases in eleven months and at least fourteen during her twenty-three-month tenure with the Complex Unit, whereas Defendants allege she completed only seven, relatively simple cases during that time. Defendants assert that, according to their calculations, the quantity of Plaintiffs' work product fell far below the quantity of work performed by the male AS-4s. Both Plaintiffs and Defendants cite to depositions and various documents for their calculation of the amount of work Plaintiffs completed thereby creating a genuine dispute as to this issue.

Even assuming Plaintiffs completed the amount of work Defendants assert they completed, when comparing that to an AS-4 male investigator named Fitz-Patrick who allegedly completed zero cases during his first ten months as an AS-4 investigator, it is clear that material issues of fact exist as to the substantial equality of Plaintiffs' work. Defendants do not dispute that Fitz-Patrick failed to complete any cases in his first ten months (D.s' SOF at ¶ 252.), but, state that after an adjustment period, Fitz-Patrick was able to expeditiously complete "increasingly more complicated financial investigations." (Id. at ¶ 255.) Irrespective of the dispute as to the quantity of work completed by Plaintiffs, the lack of productivity of Fitz-Patrick during the first ten months as an AS-4, creates at least an issue of material fact as to whether Plaintiffs' work was substantially equal.

Comparing quality of work, Plaintiffs claim their work was very complex in nature, and no different in quality, complexity, or skill than the AS-4s, while Defendants allege that Plaintiffs' work was inferior and far simpler than the AS-4s. In cases of professional complex investigatory work requiring months per investigation, as was conducted by the AS-3s and AS-4s, parsing out whether one person's investigations were more or less complex than another's is

almost inherently a question of fact.  See, e.g., Cody v. Private Agencies Collaborating Together, 911 F.Supp. 1 (D.D.C. 1995) ("The very nature of the jobs themselves, which were professional and result oriented rather than ministerial, raised genuine issues of material fact as to whether both exercised the same skill and judgment in carrying out their responsibilities").  Clearly, bald assertions by either side of the similarity or simplicity of the work between Plaintiffs and the AS-4s cannot stand at the summary judgment stage.  Davis v. Township of Paulsboro, 421 F.Supp.2d 835, 865 (D. N.J. 2006) (stating " bald assertions will not withstand summary judgment") (citing Versarge v. Twp. of Clinton, 984 F.2d 1359, 1370 (3d Cir.1993) ("unsubstantiated arguments made in briefs or at oral argument are not evidence to be considered"); Jersey Cent. Power & Light Co., 772 F.2d at 1109-10 ("[L]egal conclusions, unsupported by documentation of specific facts, are insufficient to create issues of material fact that would preclude summary judgment.").  However, both sides have submitted substantial documentation, affidavits, and other evidence tending to create a genuine dispute over the complexity of the work performed.

   The substantial equality of work is further obscured because Defendants lacked a formal criteria or  policy for differentiating AS-3 level work from AS-4 work.  (See P.s' SOF ¶ 68.)  Supervisors readily transferred cases back and forth between the AS-4s and Plaintiffs.  Defendants attempt to minimize this fact by stating that when transfers occurred, the difficult parts of the case were either over, or Plaintiffs would then be intensely supervised.  (Compare P.'s SOF ¶¶ 74-77, with Def.s' Resp. P.s' SOF ¶¶ 74-77.)   However, as various supervisors and employees have admitted, measuring the complexity of the various cases is not such a simple task.  (See, e.g., Defs.' Mot. Summ. J. Ex. F at 33.)  Where the quality of work is difficult to categorize, and the work is readily transferred back and forth between superior and inferior

13

ranking employees, a real question arises as to whether the work performed by the nominally inferior employees is substantially equal to the work of the superior employees.

Another issue of material fact emerges upon comparing the qualifications required to perform the jobs of AS-3 and AS-4. By the Director of OAE's own calculation of Plaintiffs' professional experience, all three qualified for the AS-4 position as listed in the Notice of Vacancy. The Director of the OAE credited all three Plaintiffs as having six years of relevant professional experience entering the job, yet, the only difference in qualifications listed in the Notices of Vacancy issued by the OAE between the AS-3 and AS-4 position was that the AS-4 position required five years of professional experience, while the AS-3 position required three years. Defendants rebut the alleged sufficiency of Plaintiffs' qualifications stating that Plaintiffs lacked sufficient investigative experience. However, investigatory experience was listed as "helpful" for both positions. Therefore, there is at least a genuine issue of material fact, as to whether Plaintiffs' experience was sufficient for the AS-4 position.

As a final point, the numerous cases cited by Plaintiffs which they claim "demonstrate[] that they were doing substantially equal work as that of their male comparators. . ." are inapposite or unavailing. (See Plf.s' Mot. Summ. J. at 8.) None of the cases cited held that plaintiffs were doing substantially equal work *as a matter of law*, which Plaintiffs ask the Court to find here. Furthermore, several cases cited actually held there were genuine issues of material fact regarding that very issue and one explains that the question of the substantial equality of work is almost always an issue for trial. (Id. at 7, citing cases in the order discussed in Plaintiffs' brief (citing Mullenix v. Forsyth Dental Infirmary, 965 F.Supp 120, 140-41 (D. Mass. 1996) (holding "there are material issues of fact" regarding substantial equality of work); Dubowsky, 922

14

F.Supp. at 990 (holding "[s]ummary judgment is . . . inappropriate"); Ellison v. United States, 25 Cl. Ct. 481 (C.C. 1992) (deciding substantial equality after a trial on the merits); Brewster v. Barnes, 788 F.2d 985 (4th Cir. 1986) (appeal of a bench trial); Mulhall v, Adv. Sec., Inc., 19 F.3d 586, 597 (11th Cir 1994) (holding "genuine issues of material fact exist regarding whether plaintiff . . . performed substantially similar work"); see Lavin-McEleney v. Marist College, 239 F.3d 476 (2d Cir. 2001) (stating "[w]hether two positions are 'substantially equivalent' for Equal Pay Act purposes is a question for the jury").) (citations omitted)).  Plaintiffs' failure to identify supporting case law further militates in a denial of their motion for summary judgment.

Upon reviewing literally thousands of pages of deposition transcripts, affidavits, and documents provided by both sides, this Court finds the only thing about which there can be no dispute is that there are numerous genuine issues of material fact regarding the substantial equality of Plaintiffs' work when compared to the AS-4s.

## VI. CONCLUSION

For the reasons given above, and for good cause shown,

It is on this 28th day of December 2006,

**ORDERED** that Defendants' Motion for Summary Judgment with respect to Plaintiffs' Title VII and EPA claims is **Denied**, and

**ORDERED** that Defendants' Motion for Summary Judgment with respect to Plaintiffs NJLAD claims is **Granted**, and those claims are **Dismissed**, and

**ORDERED** that Plaintiffs' Cross-Motion for Summary Judgment is **Denied**.

                _____s/Anne E. Thompson_____
                ANNE E. THOMPSON, U.S.D.J.