NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARGARET M. COX, et al., | |
| Plaintiffs, | Civil No. 05-1608 (AET) |
| v. | **MEMORANDUM AND ORDER** |
| OFFICE OF ATTORNEY ETHICS OF THE SUPREME COURT OF NEW JERSEY, and the ADMINISTRATIVE OFFICE OF THE COURTS, | |
| Defendants. | |

THOMPSON, U.S.D.J.

I.  Introduction

    This matter is before the Court on Defendants' Motion for Reconsideration of this Court's Opinion and Order, entered on December 29, 2006 (the "December Opinion"). The Court considers Defendants' Motion for Reconsideration pursuant to Local Civil Rule 7.1(i). The Court has decided this Motion after considering all the written submissions of the parties. No oral argument was heard pursuant to Fed. R. Civ. P. 78. The Court will grant in part and deny in part Defendants' Motion for Reconsideration.

II.  Background

    The Court incorporates by reference the information provided in the December Opinion. Therein, the Court: (1) granted Defendants' motion for summary judgment regarding Plaintiffs' NJLAD claims; (2) denied Defendants' motion for summary judgment regarding Plaintiffs' EPA

and Title VII claims; and (3) denied Plaintiffs' cross-motion for summary judgment.

The instant Motion for Reconsideration followed.

III.  Discussion

    A.  Standard of Review

As Defendant does not argue an intervening change in the controlling law or the availability of new evidence, the Court may grant Defendants' Motion only if they establish "the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). Under Local Civil Rule 7.1(i), a party making a motion for reconsideration must submit a "brief setting forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked." D.N.J. Civ. R. 7.1(i). In other words, the movant may address only matters that were presented to the Court, but were not considered by the Court in making the decision at issue. United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999). A party asserting a difference of opinion with a court's decision should not bring a motion for reconsideration; rather, he or she should seek relief through the normal appellate process. Chicosky v. Presbyterian Med. Ctr., 979 F. Supp. 316, 318 (D.N.J. 1997); Florham Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F. Supp. 159, 163 (D.N.J. 1988). "[R]econsideration is an extraordinary remedy, that is granted very sparingly." Brackett v. Ashcroft, No. 03-3988, 2003 U.S. Dist. LEXIS 21312, at *5 (D.N.J. Oct. 7, 2003).

    B.  Analysis

    1.  Plaintiffs' EPA Claims

Defendants argue that the Court clearly erred by finding the presence of a genuine issue of material fact as to the factor other than sex defense, which Defendants asserted against Plaintiffs' EPA claims.  In the December Opinion, the Court found that Defendants conceded that there was a material issue of fact as to this issue.  Defendants argue that they "clearly did not admit that their assertion of the defense was anything but viable."  (Defs.' Mot. for Reconsideration 9.)  The Court notes, however, that Defendants' brief did state "there are genuine issues of material fact as to whether a factor other than sex accounted for the wage disparity." (Defs.' Opp'n to Pls.' Cross Mot. for Summ. J. 34.)  Several pages later, Defendants went on to state that "genuine issues of material facts abound."  (Id. at 38.)  This Court agrees and reasserts that Defendants did concede the existence of a genuine issue of material fact and thus, have failed to identify any "clear error of law or fact" which the Court committed.  Max's Seafood Cafe, 176 F.3d at 677.

Defendants also argue that the affidavit of David E. Johnson, Director of the Office of Attorney Ethics ("OAE"), proves as a matter of law that factors other than sex accounted for Plaintiffs' wage disparity.  The Court finds a reasonable factfinder could conclude that Mr. Johnson's affidavit constitutes an after-the-fact rationalization for the OAE's employment decisions.  See, e.g., Hnot v. Willis Group Holdings Ltd., 01-6558, 2005 WL 831665, at *6 (S.D.N.Y. Apr. 8 2005) (where Plaintiff rebutted allegations contained within a declaration by a manager the court determined "a reasonable factfinder drawing reasonable inferences in favor of plaintiff could conclude that defendants' proffered reasons for the denial of raises are merely an after-the-fact rationalization to conceal discriminatory intent"); Massey v. Trump's Castle Hotel & Casino, 828 F.Supp. 314, 323 (D.N.J.1993) (stating "an injury does occur when an

employment decision is based upon improper motives notwithstanding that other legitimate rationale surfaced after the fact."); cf SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S.Ct. 454, 87 L.Ed. 626 (1943) ("Generally speaking, after-the-fact rationalization for agency action is disfavored."). The Court did not "overlook" this affidavit, but rather found it failed to meet Defendants' "heavy burden" of establishing their affirmative defense. See Dubowskuy v. Stein, 922 F.Supp. 985, 993 (D.N.J. 1996). Plaintiffs rebutted each reason Mr. Johnson provided for the pay disparity, and cast sufficient doubt that a reasonable factfinder could rule for Plaintiffs. Rather than rehash the prior Opinion, succinctly stated, Mr. Johnson's justifications failed to establish their affirmative defense "so clearly that no rational jury could find to the contrary." Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000).

Further, the Court's decision as to Plaintiffs' Title VII wage disparity claim will stand as well. Defendants fail to raise any issue that the Court overlooked, but rather evince a "difference of opinion" with the December Opinion. Chicosky, 979 F. Supp. at 318. The reiteration of old argument is not proper for reconsideration, but rather for appeal. Id. This is a case where, as Defendants put it, "genuine issues of fact abound." Therefore, these claims shall stand.

    2.    Plaintiffs' Non-Wage Based Title VII Gender and Race Claims

Defendants argue the Court "erroneously lumps all of the Title VII claims together as being wage disparity claims" and wrongfully denied Defendants' summary judgment as to these claims. Plaintiffs claim violations of Title VII for discrimination based on sex in (1) hiring; (2) paying; (3) failing to promote; and (4) failing to properly classify Plaintiffs' job. (See Defs.' Ex. 1; Pls.' First Am. Compl. ¶2.) Perry-Slay joins in all the above and also asserts Title VII, claims based on racial discrimination. (Id.) It appears the Court may have given undue breadth to the

Third Circuit's pronouncement that "[a] violation of the EPA constitutes a violation of Title VII. Thus, a prima facie showing of an EPA claim is also a prima facie showing of a Title VII violation. " Miller v. Beneficial Manag. Corp., 977 F.2d 834, 846 (3d Cir.1992) (finding against summary judgment for defendant where plaintiff asserted EPA violations and Title VII for failure to pay and promote).  Therefore, the Court will reevaluate Plaintiffs' Title VII claims of failure to hire, promote and reclassify.

     a. Failure to Hire

Under the McDonnell Douglas framework, a plaintiff's prima facie case of hiring discrimination is composed of four elements; (1) the plaintiff is a member of a protected group; (2) the plaintiff applied for and was objectively qualified to hold a job for which the employer was seeking candidates; (3) the plaintiff was rejected from the position sought; and (4) the position remained open while the employer continued to seek applications.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1977).  If these elements are met the plaintiff receives an inference that the "applicant was denied an employment opportunity for reasons prohibited by Title VII, and therefore shift[s] the burden to the employer to rebut that inference by offering some legitimate, nondiscriminatory reason for the rejection." Int'l Brotherhood of Teamsters v. United States, 431, U.S. 324 (1977) (citing McDonnell Douglas Corp., 411 U.S. at 802).  The McDonnell Douglas elements are not to be viewed as a rigid formula, and "need not be present in every Title VII case." Jackson v. U.S. Steel Corp., 624 F.2d 436, 440 (3d Cir. 1980).

Plaintiffs argue that they each met the prima facie case for failure to hire.  As women, they are members of a protected group (as well as Perry-Slay who is a woman and African American).  By Defendants' calculations of Plaintiffs' experience, they were qualified to hold the

position of AS-4, and were hired at the lower AS-3 level.

Defendants argued that Plaintiffs failed make a prima facie case because they did not specifically apply for the AS-4 position. Defendants are correct as to Perry-Slay, and Cox, who admittedly did not apply for that position. Perry-Slay and Cox argued that whether they applied for the AS-4 position is irrelevant. They assert that they satisfied the prima facie case by showing Defendants maintained a two-tiered hiring system, hiring white males at the AS-4 position, while hiring the vast majority of females at the AS-3 position. Under the Third Circuit case law this alone is insufficient to establish a prima facie case.

Perry-Slay and Cox needed to point to facts known to them at the time of their applications which made them "unwilling to subject themselves to the humiliation of explicit and certain rejection." Int'l Brotherhood of Teamsters, 431 U.S. at 365. Alternatively, they needed to show that, at the time of hiring, they did everything possible to show their interest in the AS-4 position. EEOC v. Metal Services Co., 892 F.2d 348 (3d Cir. 1990) ("Courts have generally held that the failure to formally apply for a job opening will not bar a Title VII plaintiff from establishing a prima facie claim of discriminatory hiring, as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer"). Perry-Slay and Cox failed to make such showings. Therefore, their failure to apply for the AS-4 position is fatal to their prima facie case, and their Title VII failure to hire claim must be dismissed. Defendants' Motion for Reconsideration of the December Opinion is granted, as to these counts.

Defendants' argument that Hubal did not apply for the AS-4 position is unavailing. Hubal applied to a notice of vacancy listing AS-3 and AS-4 positions. In her application, Hubal noted her desired salary was $45,000 plus. Because the minimum salary for an AS-4 investigator

was in the upper $40,000 range, (See Johnson Decl. at ¶ 43 (stating the salary was $47,490)), viewing the evidence in favor of the non-moving party, the Court finds that Hubal did apply for the AS-4 position.

However, Hubal failed to make a prima facie case because she could not show that the AS-4 position remained open after she applied, and that the OAE continued to seek applications for that position. McDonnell Douglas Corp., 411 U.S. at 802. Rather, the facts establish that no other AS-4 was hired during Hubal's tenure. See, e.g., Exum v. U.S. Olympic Committee, 389 F.3d 1130 (10th Cir. 2004) (holding plaintiff failed to make a prima facie of a Title VII violation where the position in question was not shown to remain open or become filled). Therefore, Hubal did not make a prima facie case and her Title VII failure to hire claim is also dismissed.

### b. Failure to Promote and Reclassify

The Court will allow each of Plaintiffs' Title VII claims for failure to promote and reclassify to stand. Defendants argue that Plaintiffs failed to assert a prima facie case because Plaintiffs did not seek reclassification or apply for a promotion to the AS-4 level. As stated above, the McDonnell Douglas framework is not to be applied rigidly, but must be viewed through the unique facts of each case. Jackson, 624 F.2d at 440. Proof of a formal application is not necessary in failure to promote and reclassify claims if Plaintiffs "made every reasonable attempt to convey [their] interest in the job." Metal Services, 892 F.2d 348; Babrocky v. Jewel Food Co. and Retail Meatcutters Union, Local 320, 773 F.2d 857, 867 (7th Cir.1985); Holsey v. Armour & Co., 743 F.2d 199, 208-09 (4th Cir. 1984); Ferguson v. E.I. duPont de Nemours and Co., 560 F.Supp. 1172, 1192-93 (D. Del. 1983) (where job vacancies were not posted or advertised, plaintiff's "generalized expression of interest [to supervisor] can be considered an

application" even though that interest was expressed for a different position).

     During Plaintiffs' tenure, virtually every male in the office was hired at the AS-4 level, and virtually every female was hired at the AS-3 level. (Pls.' Mot. Summ. J. Ex. A Johnson Dep. 155:3-157:14, 157:21-158:2.) By Defendants' calculation of Plaintiffs' prior work experience, each Plaintiff was qualified for the AS-4 position when they were hired as AS-3s. Cox applied for a promotion three times, not including informal requests. Further, Perry-Slay and Hubal met their prima facie burden by showing that they did everything possible to reveal their interest in being promoted to the AS-4 level once they accepted their transfer to the Complex Unit, which had been previously reserved only for AS-4 and higher positions. Metal Service, 892 F.2d at 348-49; Ferguson, 560 F.Supp. at 1192-93.

     Further, AS-3s could be and were promoted or reclassified to the AS-4 level without formally applying (See Pls.' Mot. Summ. J. Ex. E, Riddle Dep. 25:1-14; 30:13-17; Ex. N Garcia Dep. at 16:15-23; 36:9-37:8.), and Plaintiffs could have reasonably believed the same would be done for them upon their transfer. Miller, 977 F.2d at 846 (allowing plaintiff's Title VII claims for failure to pay and promote to proceed where plaintiff was given the responsibilities of a higher position but was not promoted). In the Complex Unit, Plaintiffs worked along side the AS-4s under the same supervision, were assigned cases from a common pool and work was readily transferred back and forth between the AS-4s and themselves. Therefore, Plaintiffs met their burden in establishing a prima facie case by producing sufficient evidence for a reasonable factfinder to conclude that Plaintiffs reasonably did everything possible to make their interest in the higher position known to Defendants. Metal Service, 892 F.2d at 348-49.

     Defendants did not offer legitimate nondiscriminatory reasons for failing to reclassify or

promote Perry-Slay or Hubal, therefore, their claims of failure to promote or reclassify under Title VII stand. Defendants did offer legitimate nondiscriminatory reasons for denying Cox's three requests for a promotion, twice citing the greater experience of competing candidates, and once citing performance problems by Cox. Because Defendants sufficiently rebutted Cox's prima facie case, she had the burden of demonstrating that Defendants' reasons were pretextual, and that Defendants intentionally discriminated against her. Saint Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993); Fuentes, 32 F.3d at 763.

In meeting this burden, Cox had to "produce evidence from which a reasonable factfinder could conclude either that [Defendants'] proffered justifications are not worthy of credence or that the true reason for the employer's act was discrimination." Beryl v. Marriott Hotels, 110 F.3d 986, 990 (3d Cir. 1997). The Court must "determine whether the plaintiff has cast sufficient doubt upon the employer's proffered reasons [for failing to promote] to permit a reasonable factfinder to conclude that the reasons are incredible." Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1072 (3d Cir. 1996). Cox must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [Defendants'] proffered legitimate reasons for their actions that a reasonable factfinder could rationally find them unworthy of credence." Fuentes, 32 F.3d at 765 (internal quotations and citations omitted).

The same facts that support Cox's prima facie case, cast doubt on Defendants' rebuttal, and could enable a rational factfinder to adjudge Defendants' justifications as "unworthy of credence." Fuentes, 32 F.3d at 765. Defendants calculated Cox's experience to be within the range required to work as an AS-4 on the day she was hired. Further, at least one other AS-3 was promoted without a formal application. Therefore, Defendants' reasons for passing Cox over

when she applied for a promotion do not sufficiently explain why she was not promoted upon her transfer to the Complex Unit. Defendants claim that during Cox's tenure at the Complex Unit her work was substandard when compared with the AS-4s. The Court previously addressed this contention at length in the December Opinion and notes that, although the Court takes no view as to the actual reasons for the disparity in pay and title between Cox and AS-4s, the Court finds there was sufficient evidence on both sides of the question to preclude summary judgment. Miller, 977 F2d at 847.

IV.  Conclusion

For the foregoing reasons and for good cause shown,

It is on this 25th day of April, 2007,

**ORDERED** that Defendants' Motion for Reconsideration [35] as to Plaintiffs' Title VII failure to hire claims is GRANTED; and it is further

**ORDERED** that Plaintiffs' Title VII failure to hire claims are dismissed; and it is further

**ORDERED** that Defendants' Motion for Reconsideration [35] as to Plaintiffs' remaining claims is DENIED.

                                                                             _____s/Anne E. Thompson_____
                                                                             ANNE E. THOMPSON, U.S.D.J.